# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
WILLIAM T. CUNNINGHAM,                   )
                                        )
              Plaintiff,                 )
                                        )
        v.                               )        Civil Action No. 23-01104 (ABJ)
                                        )
U.S. EQUAL OPPORTUNITY                    )
EMPLOYMENT COMMISSION,                    )
                                        )
              Defendant.                 )
_____)

## <u>MEMORANDUM OPINION</u>

On April 20, 2023, *pro se* plaintiff William Cunningham brought this action against defendant U.S. Equal Employment Opportunity Commission ("EEOC"). *See* Compl. [Dkt. # 1]. He alleges violations of the federal criminal code and the Fourth, Fifth, and Fourteenth Amendments, as well as the state-law claim of intentional infliction of emotional distress. *See* Compl. at 1, 4, 6–8. Defendant has moved to dismiss the complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Mot. to Dismiss [Dkt. # 7]; Def.'s Mem. of P. & A. in Supp. of Mot. to Dismiss [Dkt. # 7-1] ("Mot.").

For the following reasons, defendant's motion to dismiss will be **GRANTED.**

## BACKGROUND

Plaintiff was employed in the Bureau of Labor Statistics, a governmental entity housed within the Department of Labor, from December 13, 2015 until his termination on December 9, 2016. *Cunningham*, EEOC Appeal No. 2019005370 (2020), Ex. 2 to Mot. [Dkt. # 7-3] ("EEOC Appeal Decision") at 1; Compl. at 3. On the day he was terminated, plaintiff appealed his termination decision to the Merit Systems Protection Board ("MSPB"). EEOC Appeal Decision

at 1. He then filed a discrimination complaint with the Department of Labor on February 14, 2017. *Id.* at 2.[1] Finally, plaintiff filed a request for hearing with the EEOC on September 29, 2017 concerning the Department's alleged refusal to investigate his claim of discrimination. Compl. at 1.[2] Plaintiff's complaint arises out of these latter EEOC proceedings.

**Plaintiff's First EEOC Proceeding**

Plaintiff's EEOC case was assigned to Administrative Law Judge Gladys Collazo. Compl. at 1. DoL informed Judge Collazo that plaintiff's discrimination claim was being held in abeyance pending the resolution of his MSPB case, as both involved allegations of discrimination. Compl. at 1. On June 8, 2018, plaintiff contacted Judge Collazo's chambers asking for a status update. Compl. at 1. On June 13, Judge Collazo's law clerk informed plaintiff that the Department had not provided an investigation report. Compl. at 2. Plaintiff then requested the report from Department of Labor's Office of Internal Enforcement, but he was informed that no investigation was conducted because the case was being held in abeyance. Compl. at 2.

Plaintiff claims this course of conduct "effectively ended" his request for a hearing. Compl. at 2. He further alleges that Judge Collazo "could clearly see" that the cases were not connected, and that she "chose to continue to conspire with Labor Department employees instead of moving forward with the EEOC process." Compl. at 2. According to plaintiff, Judge Collazo's actions violated 18 U.S.C. §§ 2, 242, as well as the Fifth and Fourteenth Amendments. Compl. at

---

1       Plaintiff does not mention initiating the Labor Department discrimination charge (No. F17-11-051) in his complaint but refers to it. *See* Compl. at 1, 2, 5.

2       Plaintiff claims he made three hearing requests. The first one was on September 29, 2017. Compl. at 1. According to the complaint, plaintiff's EEOC case (No. 570-2018-00032X) was not opened until December 2017 but was given a "back date" of September 29, 2017. Compl. at 1.

1.  Plaintiff also appears to allege that the actions of the Department of Labor employees involved with his case violated the Fifth and Fourteenth Amendments.  Compl. at 1.

### Plaintiff's Second EEOC Proceeding

On August 29, 2018, plaintiff filed a retaliation charge against the Department of Labor, which "was given the same EEOC Case Number" as his previous EEOC proceeding.  Compl. at 2.[3]  The new charge was assigned to Administrative Law Judge Zachary Wright on October 30, 2018.  Compl. at 2.  Judge Wright, Department of Labor counsel Elizabeth Beason, and plaintiff participated in a conference call about the case on November 29, 2018.  Compl. at 3.[4]  Plaintiff claims that he noted during the call that his retaliation charge did not receive a new case number, and Judge Wright explained the case number was "just a formality."  Compl. at 3.

According to the complaint, Beason stated that the EEOC lacked jurisdiction because of the pending MSPB matter.  Compl. at 3.  She also allegedly informed Judge Wright that the Department had extended plaintiff a settlement offer for $10,000 and an agreement to remove the language "Termination During Probationary Period" from plaintiff's SF-50, Compl. at 3, which is a form used by federal employees during the job application process.[5]  Beason added that plaintiff would not be reinstated at the Department under the terms of the settlement offer.  Compl. at 3. Plaintiff claims that Judge Wright asked him whether he accepted the offer.  Compl. at 3.  Plaintiff

---

3   Plaintiff asserts, without citing any authority, that assigning his retaliation claim the same number as his discrimination claim is evidence of the conspiracy against him because "[e]ach new charge presented to the EEOC is supposed to get a new case number."  Compl. at 2.

4   The call was initially scheduled for November 15, but Judge Wright rescheduled for personal reasons.  Compl. at 2.  Plaintiff appears to claim the rescheduling was part of the conspiracy against him because it gave the Department additional time "to prepare their case for the next conference call."  Compl. at 3.

5   *See Frequently Asked Questions*, U.S. Office of Personnel Management, https://www.opm.gov/frequently-asked-questions/search/?search=sf-50 (last visited Jul. 1, 2024).

alleges he declined the offer and recounted the details of his termination, as well as the hardships he faced since being terminated.  Compl. at 3–4.  According to plaintiff, Judge Wright "sounded like he could care less" and encouraged him to accept the settlement offer, as did Beason.  Compl. at 4.  Plaintiff alleges the actions of Judge Wright and Ms. Beason "were in violation of [18 U.S.C. § 1512] and the beginning of violating [18 U.S.C. § 241]."  Compl. at 4.

On November 29, 2018, Judge Wright issued a show-cause order to the Department.[6] Compl. at 4.  The order did not mention plaintiff's retaliation claim, but it instructed the agency to provide a counteroffer to plaintiff's settlement demand.  Compl. at 4.  Plaintiff alleges Judge Wright's conduct violated 18 U.S.C. § 241, and "began to violate" 18 U.S.C. §§ 242, 1343, 1505, and the Fifth and Fourteenth Amendments.  Compl. at 4.  Plaintiff also claims he submitted a new retaliation charge to the EEOC.  Compl. at 4.

According to the complaint, prior to the Department of Labor's submission of its counteroffer, plaintiff sent Judge Wright "unwavering proof" that he experienced discrimination, informed him of provisions of the collective bargaining agreement he was subject to, and shared a major contribution he made to the Department.  Compl. at 4–5.  On December 17, 2018, the Department submitted its counteroffer, which plaintiff alleges was identical to its initial offer. Compl. at 5.  Plaintiff claims Judge Wright "did nothing about the counteroffer being exactly the same as the original settlement offer."  Compl. at 5.  The Department submitted its response to the order to show cause on December 20, 2018, and plaintiff responded the next day.  Compl. at 5.

---

6       Although the complaint does describe what the order required of the parties, the EEOC Appeal Decision explains the order gave "the [Department] an opportunity to explain why it did not investigate the non-termination portion of [plaintiff's] EEO complaint."   EEOC Appeal Decision at 3.

On February 21, 2019, Judge Wright granted default judgment in favor of the plaintiff, sanctioned the Department, and ordered plaintiff to submit a *prima facie* showing of discrimination.  Compl. at 5.  Judge Wright also found that plaintiff's cases with the Department of Labor and MSPB were not "inextricably intertwined."  Compl. at 5.  In a footnote, Judge Wright explained that the default judgment entitled plaintiff monetary relief only for creation of a hostile work environment and denial of a bonus, but not reinstatement.  Compl. at 5.  Plaintiff alleges Judge Wright violated 18 U.S.C. § 242, apparently for granting default judgment in plaintiff's favor and not reinstating him at the Bureau of Labor Statistics.  Compl. at 6–7.

On March 11, 2019, plaintiff submitted his *prima facie* showing of discrimination.  Compl. at 6.  Plaintiff claims that due to a footnote in Judge Wright's order, he did not include information in his brief about his supervisor withholding his bonus.  Compl. at 6.[7]  According to the complaint, however, Judge Wright, "was already well aware through prior emails as well as conference calls of [plaintiff] not receiving a bonus."  Compl. at 6.  The Department responded to plaintiff's *prima facie* showing of discrimination on March 28, 2019 and allegedly "only mentioned matters pertaining to a bonus."  Compl. at 6.  Judge Wright issued a decision on April 11, 2019, finding that plaintiff failed to establish a *prima facie* case for discrimination.  Compl. at 6.  Plaintiff alleges that Judge Wright relied upon plaintiff's failure to mention his bonus in his brief as grounds for his decision.  Compl. at 6.

Plaintiff claims that Judge Wright and Department of Labor counsel Beason, among others, attended an EEOC Meet and Greet event on April 10, 2019, the day before he issued his decision.

---

7       The footnote stated:  *"While the Agency argues any claim relating to Complainant's bonus would be untimely raised, the lack of an investigation into this claim prevents such a determination*."  Compl. at 6 (emphasis in original).

Compl. at 6.  Plaintiff seems to allege that Judge Wright spoke with Department counsel at the
event and that their discussion influenced Wright's decision in plaintiff's discrimination case.
Compl. at 6.  According to plaintiff, the actions of Judge Wright and Beason violated 18 U.S.C.
§ 241.  Compl. at 6.

The parties held a conference on April 12, 2019, which plaintiff claims he recorded.
Compl. at 7.  On the call, Judge Wright can allegedly "be heard depriving [plaintiff] of his request
for relief" – presumably reinstatement – and allegedly violating various federal laws.  Compl. at
7.  Plaintiff also alleges Judge Wright said on the call, "Mr. Cunningham I can't award this type
of relief to you even if I wanted to," which plaintiff claims "along with [Judge Wright's] other
actions" constitutes intentional infliction of emotional distress.  Compl. at 7.[8]  After the conference
call, plaintiff emailed Judges Wright and Collazo asking for "some sort of legal statute as to why
he is unable to receive his requested relief."  Compl. at 7.  Plaintiff alleges that neither judge
responded, and that their actions and omissions are evidence of their conspiracy with the
Department of Labor.  Compl. at 7.

On May 31, 2019, Judge Wright issued a decision regarding the Department of Labor's
liability and damages after granting plaintiff a default judgment.  Compl. at 7.  Judge Wright
ordered the Department to pay plaintiff $5,000, provide specified training, and post a notice
regarding the finding of discrimination.  Compl. at 7.  Plaintiff alleges that because this order did
not grant plaintiff his requested relief, Judge Wright "conspire[ed] with the DoL by aiding and
abetting the DoL to further retaliate against" plaintiff in violation of 18 U.S.C. §§ 2, 1513.

---

8       According to the next sentence in the complaint, Judge Wright's "other actions" appear to
be (1) ordering a monetary award less than the DoL's settlement offer; and (2) not removing the
termination notation from plaintiff's SF-50, as stipulated in the settlement offer.  Compl. at 7–8.

Compl. at 7.   Plaintiff also alleges that Judge Wright violated the Fifth and Fourteenth Amendments and "several statutes" on the April 12 conference call "by not granting the proper due process nor equal protection of the law."  Compl. at 7.

### Plaintiff's Appeal

Plaintiff appealed Judge Wright's decision to the EEOC Office of Federal Operations ("OFO").  Compl. at 8.  On July 23, 2020, OFO Director Carlton Hadden issued his decision affirming Judge Wright's decision.  *See* Compl. at 8; *see also* EEOC Appeal Decision at 4. Plaintiff alleges that by not reinstating the plaintiff or removing the termination notation from his SF-50, Director Hadden violated 18 U.S.C. §§ 2, 241–242, 1513, and the Fourth, Fifth, and Fourteenth Amendments.  Compl. at 8.  Plaintiff further claims that Director Hadden's statement in his ruling that plaintiff failed to prove he deserved more than $5,000 caused him "more emotional distress."  Compl. at 8.[9]

Although the complaint is prolix and not entirely clear, it appears to allege that:

- EEOC and Department of Labor employees committed federal crimes by conspiring to deprive, and aiding and abetting the deprivation of, his constitutional rights under color of law, among others federal criminal violations.  *See* Compl. at 1, 4, 6–8,

- EEOC and Department of Labor employees violated the Fourth, Fifth, and Fourteenth Amendment during the course of plaintiff's series of proceedings. Compl. at 1, 4, 7–8.

- The actions of EEOC and Department of Labor employees, including the denial of plaintiff's request for reinstatement, constituted the tort of intentional infliction of emotional distress.  Compl. at 7.

On July 20, 2023, defendant moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.  *See* Mot. at 6.

---

[9]      In his decision, Director Hadden stated:  "[Plaintiff] disputes the award to him of $5,000 . . . . [W]e find [plaintiff] has not shown he is entitled to more."  EEOC Appeal Decision at 3.

Plaintiff opposes the motion, *see* Pl.'s Mot. to Continue [Dkt. # 10]; Pl.'s Mem. of P. & A. in Supp. of Pl.'s Mot. to Continue [Dkt. # 10-1] ("Opp."), and the matter is fully briefed.  *See* Def.'s Reply Br. in Supp. of Mot. to Dismiss [Dkt. # 12] ("Reply"); Pl.'s Mot. to Add Additional Information [Dkt. # 13] ("Pl.'s Mot. to Add").[10]

## LEGAL STANDARD

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citations omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (applying principle to a Rule 12(b)(1) motion).  Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (rule 12(b)(6) case); *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (rule 12(b)(1) case).

## Subject Matter Jurisdiction

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).  Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen*

---

[10]   Plaintiff filed a motion to continue on August 21, 2023, which the Court deemed to be plaintiff's opposition to defendant's motion to dismiss.  *See* Pl.'s Mot. to Continue [Dkt. # 10].

*v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms.*, *Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79, citing *Twombly*, 550 U.S. at 555–56.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.* at 682, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), citing *Schuler*, 617 F.2d at 608. Where the action is brought by a *pro se* plaintiff, a district court has an obligation "to consider his filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014), citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; 16 F.3d at 1276; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice."

*Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

### I.   Plaintiff's Criminal Law Claims Must Be Dismissed.

Plaintiff attempts to bring claims under a number of provisions of the federal criminal code, including 18 U.S.C. §§ 2, 241, 242, 1343, 1505, 1512, 1513.  Compl. at 1, 4, 6–8.  Defendant argues that the statutes involved do not include a private right of action for their civil enforcement.  Mot. at 7.  This is accurate, and the claims based on alleged violations of criminal law will be dismissed.

"[T]here is no private right of action to enforce provisions of criminal law, and only a federal prosecutor may determine whether to pursue a criminal action."  *Ajenifuja v. Dangote*, 485 F. Supp. 3d 120, 128 (D.D.C. 2020), quoting *Ivey v. Nat'l Treasury. Emps. Union*, No. 05-1147, 2007 WL 915229, at *5 (D.D.C. Mar. 27, 2007); *see also Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) (internal quotations omitted) (noting that the Supreme Court has "refused to infer a private right of action from a bare criminal statute" (internal quotation marks omitted)).  This means that private individuals cannot bring a claim under a criminal statute "unless a specific statute provides for a private right of action." *Trice v. FDIC*, No. 17-cv-1564, 2022 WL 17250284, at *4 (D.D.C. Nov. 28, 2022) (citation omitted).

Unlike criminal statutes that do precisely that, *see, e.g.*, 18 U.S.C § 2333 (creating civil remedies for U.S. nationals injured by an act of international terrorism), none of the cited provisions in Title 18 expressly create a private right of action under which defendants may be sued.  Plaintiff's criminal law claims will therefore be dismissed.  *See, e.g.*, *Johnson v. D.C. Crim. Just. Act*, 305 F. App'x 662, 662 (D.C. Cir. 2008) (affirming dismissal of claims brought under

18 U.S.C. §§ 241 and 242 by a private individual because the statutes provide no private right of action).

## II.     Plaintiff Fails to Plausibly Allege Violations of the Fourth, Fifth, or Fourteenth Amendments.

Plaintiff alleges that defendant EEOC and Department of Labor employees violated the Fourth, Fifth, and Fourteenth Amendments throughout his various proceedings.  Compl. at 1, 4, 7–8.  Plaintiff fails to provide sufficient facts or details to substantiate any of the purported violations, and his claims will be dismissed.

### A.     Plaintiff fails to plausibly allege a Fourth Amendment violation.

In his complaint, plaintiff alludes to the Fourth Amendment only once, claiming: "Instead of following the MD-110 that clearly states what the Complainant is entitled, [Office of Federal Operations Director Carlton Hadden's] actions were in violation of . . . the 4th, 5th and 14th Amendments."  Compl. at 8.  The "actions" in question refer to Director Hadden's affirmance of Judge Wright's May 31, 2019 decision, which awarded plaintiff $5,000.  *See* EEOC Appeal Decision at 4.

The Fourth Amendment protects individuals against "unreasonable searches and seizures" by the government, U.S. Const. amend. IV, and it is entirely inapplicable here.  Plaintiff's single allegation amounts to nothing more than an unsupported legal conclusion, which the Court need not, and will not, accept.  *Kowal*, 16 F.3d at 1276.

### B.     Plaintiff fails to plausibly allege a Fifth Amendment violation.

Throughout his complaint, plaintiff alleges that EEOC and Department of Labor employees deprived him of his Fifth Amendment rights.  *See* Compl. at 1, 4, 7–8.  First, he claims without further elaboration that EEOC Administrative Law Judge Collazo aided and abetted "the DoL with the violation of [plaintiff's] [c]onstitutional [r]ights (5th & 14th Amendments)."  Compl. at 1.

Next, he claims that Administrative Law Judge Wright's November 29, 2018 order to show cause violated the Fifth Amendment.  Compl. at 4.  Plaintiff further alleges that Judge Wright deprived him of his Fifth Amendment rights during the April 12, 2019 conference call by "not granting the proper due process nor equal protection of the law."  Compl. at 7.  Finally, plaintiff claims that Director Hadden's appeal decision violated the Fifth Amendment.  Compl. at 8.

The Due Process Clause of the Fifth Amendment provides that an individual shall not "be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  A core tenet of procedural due process is that "a deprivation of live, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"  *Cleveland Bd. of Educ. V. Loudermill*, 470 U.S. 532, 542 (1985), quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950).  "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'"  *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014), quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999).  If that is shown, then the court considers "whether the procedures used by the Government in effecting the deprivation 'comport with due process.'"  *Id.*, quoting *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 59.

In his opposition, plaintiff asserts that "federal employment is constitutionally protected property, meaning that it cannot be taken away without due process."  Opp. at 2. That can be true in some cases, but whether a government employee has a constitutionally protected property interest in their employment "turns on the extent of any substantive limitations on the government's authority to remove [them]."  *Esparraguera v. Dept. of the Army*, 101 F.4th 28, 33 (D.C. Cir. 2024).  A plaintiff must show "a legitimate expectation, based on rules (statutes or regulations) or understandings (contracts, express or implied)" that he would not be terminated.

*Piroglu v. Coleman*, 25 F.3d 1098, 1104 (D.C. Cir. 1994), quoting *Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988); *see also Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. . . . He must, instead, have a legitimate claim of entitlement to it."). Here, plaintiff does not allege any "legitimate expectation," *Piroglu*, 25 F.3d at 1104, that he would not be terminated. *See generally* Compl.; Opp.[11]

Moreover, even if plaintiff had a protected property interest in his federal employment, his claim would still fail. "A procedural due process violation occurs when an official deprives an individual of a liberty or property interest without providing appropriate procedural protections." *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009). What is considered appropriate depends on the particular situation and case. *See Ralls Corp.*, 758 F.3d at 317. And in asserting a procedural due process violation, a plaintiff "necessarily presents the question of what, if any, additional process is due." *Doe ex rel. Fein v. District of Columbia*, 93 F.3d 861, 868 (D.C. Cir. 1996).

Plaintiff baldly alleges various violations of the Fifth Amendment, but he does not point to the denial of any procedure to which he was entitled. *See generally* Compl. Instead, it appears that plaintiff stakes his due process claim on his dissatisfaction with the *outcome* of his proceedings. *See* Compl. at 1, 4, 7–8. The complaint details at length the various processes of

---

[11]    Although plaintiff claims otherwise in his opposition, *see* Opp. at 1, it appears from a document referenced in the complaint that he was a probationary employee at the Department of Labor at the time of his termination. *See* EEOC Appeal Decision at 1; *see also* Compl. at 3 (noting that "Termination During Probationary Period" was placed on plaintiff's SF-50); Order in EEOC Case No. 570-2018-00032X, Ex. 1 to Def.'s Mot. [Dkt. # 7-3] ("EEOC Order") (stating that plaintiff was dissatisfied "with his termination during his probationary period"). To the extent that plaintiff was a probationary employee, his employment would be "at will" and he would have no protected property interest in his employment. *See Piroglu*, 25 F. 3d at 1104.

which plaintiff availed himself to seek redress for his allegedly unlawful termination, including his claim with the MSPB, his discrimination claim with the Department of Labor, both EEOC proceedings, and his appeal of his EEOC decision.  *See generally* Compl.  As the government notes, "[p]laintiff's own description of events suggest[s] he was afforded due process."  Mot. at 12.

The only time plaintiff specifically alleges a denial of due process is in his opposition.  *See* Opp. at 4 (alleging that the Department of Labor attempted to "stifle" his due process when it "moved to dismiss the Plaintiff's EEOC appeal to the [Office of Federal Operations]" because he filed a civil action in federal court).[12]  Contrary to plaintiff's allegation, it does not appear that this action denied him any due process or affected his OFO appeal at all.  Plaintiff not only received a decision in his OFO appeal, but the decision states, "[t]o the extent the [Department of Labor] argues that [plaintiff's] administrative EEO action should be terminated because he filed a civil suit on the same matters, we disagree because the [c]ourt dismissed the civil action for failure to exhaust his administrative remedies."  EEOC Appeal Decision at 4; *see also* Opp. at 4, citing *Cunningham v. Wright*, 19-cv-03357 (D.D.C. Jan. 31, 2020).  Because his OFO claim was heard, plaintiff's allegation that he was denied procedural due process falls flat.

In sum, plaintiff has alleged no protected property interest upon which his procedural due process claim is based, and he fails to identify any process that was due but denied.  Plaintiff's Fifth Amendment claim must accordingly be dismissed.

---

12    Plaintiff fails to plead these specific allegations in his complaint, but the Court addresses them given the obligation "to consider [a *pro se* plaintiff's] filings as a whole before dismissing a complaint."  *Schnitzler*, 761 F.3d at 38.

**C.      Plaintiff fails to plausibly allege a Fourteenth Amendment violation.**

Plaintiff alleges – in an unspecified manner – that Judge Wright's and Director Hadden's actions violated the Fourteenth Amendment.  *See* Compl. at 4, 7–8.  The Fourteenth Amendment, however, "operates only to control action of the states, and does not purport to extend to authority exercised by the government of the United States."  *Wight v. Davidson*, 181 U.S. 371, 384 (1901); *see also* U.S. Const. amend. XIV § 1 ("No *state* shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any *State* deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.") (emphasis added).   Plaintiff's Fourteenth Amendment claim against defendant, a federal agency, must accordingly be dismissed under Rule 12(b)(6).

### III.    Plaintiff Fails to State A Claim for Intentional Infliction of Emotional Distress.

Plaintiff alleges that Judge Wright's April 12, 2019 comments and Director Hadden's affirmance of the order finding the Department liable but failing to reinstate him amount to the tort of intentional infliction of emotional distress.  Compl. at 7–8.  Plaintiff's claim fails.[13]

To state a claim of IIED claim under D.C. law, a plaintiff must allege "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress."  *Minch v. District of Columbia*, 952 A.2d 929, 940 (D.C. 2008) (citation omitted); *see also Rogala v. District of Columbia*, 161 F.3d 44, 57–58 (D.C. Cir. 1998) (applying the same three-part analysis).  To be "extreme and outrageous," conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *Armstrong v. Thompson*, 80 A.3d 177, 189 (D.C. 2013), quoting *Drejza v. Vaccaro*, 650 A.2d 1308, 1312 n.10 (D.C. 1994).  "The requirement of outrageousness is not an easy one to meet."  *Drejza*, 650 A.2d at 1312.  Further, "severe emotional distress" must be "emotional distress of so acute a nature

---

13    The FTCA provides that, prior to initiating suit in the United States district courts, "the claimant shall have first presented the claim to the appropriate Federal agency."  28 U.S.C. § 2675(a); *GAF Corp. v. United States*, 818 F.2d 901, 905 (D.C. Cir. 1987) ("Only after a proper presentment has been made may a claimant commence a lawsuit in federal court.").  An administrative claim is considered presented for purposes of § 2675 when a claimant provides a federal agency with "an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damage."  28 C.F.R. § 14.2.

Plaintiff failed to allege that his IIED claim was properly presented to the EEOC prior to filing this lawsuit.  *See generally* Compl.  Based solely on the complaint, then, this Court lacks subject matter jurisdiction to hear his claim.  Plaintiff nevertheless argues in his opposition that he timely served "the EEOC and US [*sic*] Attorney with a SF-95," in which he allegedly "pointed out all the wrongful or negligent acts and omissions of the EEOC employees."  Opp. at 2.  However, even considering and crediting plaintiff's statement that he timely served an SF-95s and exhausted his administrative remedies, *see Schnitzler*, 761 F.3d at 38 (describing a court's obligation "to consider [a *pro se* plaintiff's] filings as a whole before dismissing a complaint"), his IIED claim still must be dismissed for failure to state a claim for the reasons discussed below.

that harmful physical consequences might be not unlikely to result." *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 164 (D.C. 2013), quoting *Kotsch v. District of Columbia*, 924 A.2d 1040, 1046 (D.C. 2007).

According to plaintiff, the "extreme and outrageous conduct" he suffered was Judge Wright's April 12, 2019 statement, "I can't award this type of relief to you even if I wanted to," Compl. at 7, and Director Hadden's "state[ment] in his ruling that [plaintiff] didn't prove that he deserved more than the $5,000 awarded to him." Compl. at 8.[14] While plaintiff may have been understandably dissatisfied with the outcome of his EEOC proceeding, liability for IIED "will not be imposed for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998) (internal quotations omitted); *see also Ortberg*, 64 A.3d at 163 (explaining that conduct must be found by the average person to be outrageous).[15] Plaintiff's claim for IIED will therefore be dismissed.

---

[14]    Plaintiff also claims Judge Wright's "other actions . . . constitute[d]" IIED, but he does not specify what the alleged "other actions" are. Compl. at 7. Assuming that they include (1) ordering a monetary award less than DoL's settlement offer, and (2) not removing the termination notation from plaintiff's SF-50, as stipulated in the settlement offer, *see* Compl. at 7–8, neither of those actions satisfy the standard for "extreme and outrageous" conduct. *See Armstrong*, 80 A.3d at 189.

[15]    Plaintiff's IIED claim fails for additional reasons. Aside from alleging that Judge Wright's April 12, 2019 comments and "other actions" were "done . . . with malice," Compl. at 7–8, he fails to plead allegations concerning Wright or Hadden's state of mind. *See generally* Compl. Nor has he shown that Wright and Hadden's actions caused "severe emotional distress" under D.C. law. *See Ortberg*, 64 A.3d at 164 ("Recovery is not allowed merely because conduct causes mental distress," quoting *Crowley v. N. Am. Telecomms. Ass'n*, 681 A.2d 1169, 1172 (D.C. Cir. 1997)). In fact, plaintiff does not appear to specifically allege the nature of any emotional distress endured. *See generally* Compl.; Opp.; *see also Ortberg*, 64 A.3d at 164 (describing common symptoms of emotional distress including sleep loss and inability to concentrate as well as the relevance of the intensity and duration of the distress).

**IV.     Sovereign Immunity Bars Plaintiff's Constitutional Tort Claims.**

While it is not clear from his complaint, plaintiff states in his opposition that he is "filing a lawsuit for [c]onstitutional [t]orts."  Opp. at 2.  The opposition did not clarify exactly what constitutional torts he alleges, aside from the fact that they were committed by "federal employees."  Opp. at 3.  Nonetheless, any such claims cannot succeed.

"It is axiomatic that the United States may not be sued without its consent."  *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *see also United States v. Sherwood*, 312 U.S. 584, 586 (1941) ("The United States, as sovereign, is immune from suit save as it consents to be sued."). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).

Sovereign immunity is jurisdictional in nature and the status of the United States's consent to be sued will determine a court's jurisdiction to hear a particular case.  *See id.*; *see also Mitchell*, 463 U.S. at 212 ("[T]he existence of consent is a prerequisite for jurisdiction.").  "[A] claim barred by sovereign immunity lacks subject matter jurisdiction and may be dismissed under a 12(b)(1) motion."  *Scruggs v. Bureau of Engraving & Printing*, 200 F. Supp. 3d 78, 82 (D.D.C. 2016).  To survive a 12(b)(1) motion, a plaintiff must prove that sovereign immunity has been waived.  *See Jackson v. Bush*, 448 F. Supp. 2d 198, 200 (D.D.C. 2006), citing *Tri-State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003).

United States district courts have jurisdiction where sovereign immunity has been waived. 28 U.S.C. § 1346(b); *Meyer*, 510 U.S. at 477.  Section 1346(b)'s waiver of sovereign immunity, however, does not include constitutional torts.  *Meyer*, 510 U.S. at 478 ("[T]he United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims.").  Accordingly,

to the extent plaintiff alleges a constitutional tort against defendant, a federal government agency, this Court lacks jurisdiction to hear it.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the complaint [Dkt. # 7] is **GRANTED.**

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: September 30, 2024